■ Gurumurthy Kalyanaram, Appellant, v New York Institute of Technology, Respondent. Labe M. Richman, Nonparty Appellant. [879 NYS2d 467]—

Judgment, Supreme Court, New York County (Marylin G. Diamond, J.), entered November 15, 2007, dismissing the petition in this special proceeding pursuant to CPLR 7502 (c), granting respondent's motion to enjoin petitioner and his agents from threatening, or attempting to influence any of the witnesses or prospective witnesses in the arbitration proceeding, and awarding respondent costs pursuant to 22 NYCRR 130-1.1 (c) (2) totaling $5,142.50 as against petitioner and $10,142.50 as against his attorney, nonparty appellant Labe M. Richman, Esq., modified, on the law and the facts, as to the awarding of costs only, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered October 18, 2007, unanimously dismissed, as subsumed in the appeal from the judgment. Order, same court and Justice, entered November 30, 2007, which denied petitioner's motion for injunctive relief and denied his request for 22 NYCRR 130-1.1 sanctions against respondent, unanimously affirmed, without costs.

The court properly exercised its discretion (*see Town of Esopus v Fausto Simoes & Assoc.*, 145 AD2d 840, 841 [1988]) in denying injunctive relief to reinstate petitioner's rights and privileges as a tenured professor pending resolution of an arbitration proceeding. Petitioner failed to meet his burden of demonstrating a "likelihood of success on the merits, irreparable injury in [the] absence of such relief and a balancing of the equities in [his] favor" (*Matter of Non-Emergency Transporters of N.Y. v Hammons*, 249 AD2d 124, 127 [1998]). The record shows that respondent's representatives promptly and thoroughly investigated the students' allegations against petitioner and found them credible. Nor did the record support petitioner's contention that respondent violated the collective bargaining agreement, as respondent maintained petitioner on the payroll pending determination of the agreement's grievance/arbitration process.

However, we find that under all of the circumstances, the court abused its discretion in awarding costs against petitioner and his attorney pursuant to 22 NYCRR 130-1.1 based on the

record before it and modify the decision so as to eliminate the award of costs.

We have considered the remaining arguments of petitioner and Mr. Richman and find them unavailing. Concur— Moskowitz, Renwick and Freedman, JJ.

Tom, J.P., dissents in part in a memorandum as follows: Petitioner, already represented by an attorney on his claim of wrongful termination of employment, retained a criminal lawyer whose sole contribution was to send a letter to respondent's witness stating that her testimony against petitioner could constitute perjury, followed by a letter to the respective director of security at each of respondent's New York campuses asserting that "an investigation by your office will lead you to the conclusion that [the witness] committed perjury in violation of New York Penal Law Sections 210.05; 210.10." Since I agree that no valid basis has been advanced for the equitable relief sought by petitioner and because I regard the unauthorized communication as an unvarnished attempt to intimidate a witness, I conclude that the imposition of costs and the award of attorneys' fees against petitioner and additional counsel was a provident exercise of Supreme Court's discretion.

After investigating complaints from 37 students regarding petitioner's inappropriate conduct during class, respondent sent a letter to petitioner notifying him that, pursuant to the collective bargaining agreement (CBA) governing professors employed by New York Institute of Technology, "you are hereby dismissed, effective as of May 21, 2007, for engaging in serious professional misconduct." The letter asserted that petitioner denigrated students' intelligence and ethnicity, made sexually explicit remarks, demeaned other faculty members at an affiliated college and made sexual advances toward female students. On June 4, petitioner invoked the grievance procedure under the CBA and, the following day, brought this proceeding (a) to compel arbitration (CPLR 7503 [a]) and (b) for equitable relief (CPLR 7502 [c]) "prohibiting respondent from effectuating petitioner's dismissal . . . and (c) compelling respondent to permit petitioner to continue in his employment . . . until the completion of the grievance and arbitration proceedings."

The CBA provides that in the event respondent decides to "suspend or dismiss a faculty member," he or she may file a grievance, in which case the parties will utilize the CBA's grievance and arbitration procedures. The CBA further provides that the faculty member "shall be paid until the review procedures set forth herein are exhausted and a final determination rendered." It is undisputed that petitioner is continuing to

receive his regular salary pending resolution of the grievance proceeding.

Having filed his grievance on June 4, 2007, petitioner was not, on June 5, 2007 when the petition was filed, "[a] party aggrieved by the failure of another to arbitrate" (CPLR 7503 [a]) so as to warrant issuance of an order compelling arbitration. The petition alleges neither that respondent refused to proceed with arbitration nor delayed the proceedings. Furthermore, the relief sought by petitioner is already available to him under the parties' CBA. Thus, petitioner failed to demonstrate the need for judicial intervention.

The availability of limited provisional relief under CPLR article 75 is not an invitation to commence proceedings merely collateral to arbitration. To avoid resort to the courts to protract the proceedings, "the Legislature has assigned the courts a minimal role in supervising arbitration practice and procedures" (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 95 [1975]). Injunctive relief is available "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief" (CPLR 7502 [c]). Petitioner has not shown why an award rendered in arbitration would be less than effective in affording him the full relief to which he is entitled under the CBA. Nor, as the majority notes, has petitioner established the customary equitable criterion of immediate and irreparable injury (CPLR 6301; *see Koultukis v Phillips*, 285 AD2d 433, 435 [2001]) required of a party seeking injunctive relief under CPLR 7502 (c) (*see Koob v IDS Fin. Servs.*, 213 AD2d 26, 32 [1995]). Thus, he has not established that his is an exceptional case warranting reversal of the denial of preliminary injunctive relief (*see Town of Esopus v Fausto Simoes & Assoc.*, 145 AD2d 840, 841 [1988]).

As to respondent's motion for costs and attorneys' fees against petitioner and additional counsel (collectively, appellants) under Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1 (c) (2), "[t]he authority to impose sanctions or costs is committed to the court's sound discretion and, absent an abuse thereof, [an appellate court] will not disturb such an award" (*McCue v McCue*, 225 AD2d 975, 977 [1996]). This Court "will defer to a trial court regarding sanctions determinations unless there is a clear abuse of discretion" (*Pickens v Castro*, 55 AD3d 443, 444 [2008]). No such abuse is discernable.

According to his affidavit, counsel was consulted by petitioner for the limited purpose of sending a letter to a witness against petitioner, followed by a second letter to respondent's campus

security directors. The witness submitted an affidavit attesting to petitioner's unwelcome verbal and physical advances, conduct that resulted in the witness's filing a formal complaint with respondent's director of human resources. Specifically, she avers that petitioner spent a good portion of class time asking her personal questions, that he asked her to break up with her boyfriend, invited her to dinner in his apartment, and hugged her and kissed her. Counsel's letter to the witness is dated within two weeks of her affidavit, and his letter to respondent's security staff is dated approximately two weeks thereafter. Another student also submitted an affidavit in support of respondent's opposition to petitioner's proceeding for injunctive relief.*

From the perspective of a sophisticated reader, well versed in the law, counsel's letter to the witness is something less than an unqualified accusation of perjury. It states, equivocally, "I determined that it was my client's position that statements made in your affidavit were untrue." The language employed is conditional: "If indeed your sworn allegations were knowing falsehoods, without a retraction, you could be guilty of perjury." But the threat of prosecution and the proffered solution are unlikely to have been lost on an unsophisticated, young layperson: "if you change your affidavit to rectify any untrue statements before the proceeding in New York State Supreme Court is over, you may have a defense to the perjury charges." Copies of the pertinent Penal Law provisions were enclosed. Finally, while the letter advises the witness to seek independent advice, it counsels the witness to consider retraction and invites further communication, stating, "Although you should certainly obtain your own legal advice, I wanted to inform you that if you lied in your statement, you might want to retract the statement sooner rather than later, so that this defense might be available to you." The letter concludes, "If you do not have an attorney, feel free to contact me at the above number to discuss this further."

In his affidavit in opposition to respondent's motion for costs, counsel states that he is unfamiliar with civil litigation. He professes to have been misled by petitioner's claim that the witness was in an abusive relationship and was pressured into filing a false statement. He explains that he was persuaded "to send the letter because I believed that if, in fact, she had com-

---

* The student asserted that petitioner (1) told a female student that his libido increased whenever she walked into class and then made a stroking motion at his crotch; (2) commented on several occasions on the size of a particular student's breasts; and (3) regularly disparaged the backgrounds of foreign students and called them "stupid" and "idiots."

mitted perjury, notably because of pressure from her boyfriend, that she might welcome the knowledge about the defense to perjury and would obtain counsel in an effort to help herself." However, this sentiment is in sharp contrast to the tone of counsel's letter to respondent's campus security directors, which states that the witness's affidavit "makes outlandish statements against Mr. Kalyanaram. We believe that a modest investigation by you of these statements will uncover the statement's [sic] falsity and that after this investigation, you will determine that the matter should be referred to law enforcement." It should be noted that during the course of the proceeding, the parties and their attorneys appeared twice before the court and submitted extensive affidavits and information. At no time did counsel on behalf of petitioner seek discovery or request an evidentiary hearing which would have shed light on the veracity of the complaints.

It bears emphasis that the standard of review in this matter is not whether this Court, examining the circumstances de novo, might conclude that the propriety of this communication with an adverse witness should be consigned to the Departmental Disciplinary Committee, to which it has been referred, for investigation and determination. Nor is it a question of whether Supreme Court committed legal error in imposing costs and fees against petitioner and counsel. The only issue before us is whether the imposition of costs and fees constitutes "a clear abuse of discretion" by the court (id.).

Appellants have advanced no basis for departing from Supreme Court's conclusions that petitioner "decided to threaten [the witness] with the specter of having to endure a criminal perjury investigation and indictment which he would initiate," and that counsel "should have recognized that such extra-judicial efforts to put pressure on [the witness] to retract her charges against petitioner in this proceeding and in the arbitration proceeding were highly improper." As the court noted, costs may be awarded for frivolous conduct upon motion after affording a reasonable opportunity to be heard (22 NYCRR 130-1.1 [d]) and, in this case, appellants received ample opportunity to oppose respondent's motion, submitting extensive opposing papers.

While, as noted, there is little merit to petitioner's application for injunctive relief, which seems to have been interposed merely to prolong the proceedings, whether it is so devoid of legal merit as to be considered frivolous is subject to interpretation (22 NYCRR 130-1.1 [c] [1], [2]). There can be no question, however, that the communications with the witness and with respondent's

campus security directors, whether or not amounting to an outright accusation of perjury, were intended "to harass or maliciously injure" respondent's witness (22 NYCRR 130-1.1 [c] [2]). The communications transgressed the former Code of Professional Responsibility DR 7-105 (a) (22 NYCRR 1200.36 [a]), which provided, "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." They also offended DR 7-104 (a) (22 NYCRR 1200.35 [a]), which provided:

"During the course of the representation of a client a lawyer shall not: . . .

"(2) Give advice to a party who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such party are or have a reasonable possibility of being in conflict with the interests of the lawyer's client." Because petitioner and counsel were both involved in the decision to send the offending letters, the court properly imposed costs against both.

As a final consideration, "this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (*Matter of Nationwide Gen. Ins. Co.*, 37 NY2d at 95). Due to petitioner's application for relief already afforded to him by the CBA and appellants' attempt to influence the testimony of a witness, respondent has been required to invoke the courts' exercise of supervision over the arbitral process. The record in this matter, which exceeds 800 pages, reflects the extent of the imposition on the time and resources of both respondent, as a party to the arbitration, and of the courts, in contravention of the legislative intent to avoid court litigation in arbitrated disputes (*see Matter of Weinrott [Carp]*, 32 NY2d 190, 199 [1973]).

The need to respond to petitioner's unnecessary resort to judicial intervention in the arbitral process and to move for preliminary relief enjoining any further attempt to threaten or influence witnesses more than justifies the imposition of costs against both petitioner and counsel. Accordingly, the order should be affirmed. [*See* 17 Misc 3d 1135(A), 2007 NY Slip Op 52267(U).]