[977 NYS2d 192]

In the Matter of PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., on Behalf of Itself and JOSEPH ANTHONY and Others, Respondents, v CITY OF NEW YORK et al., Appellants.

First Department, December 3, 2013

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Ellen Ravitch* and *Pamela Seider Dolgow* of counsel), for appellants.

*Gleason, Dunn, Walsh & O'Shea,* Albany (*Ronald G. Dunn* and *Mark T. Walsh* of counsel), and *Michael T. Murray,* New York City (*Michael T. Murray, Gaurav I. Shah* and *David W. Morris* of counsel), for respondent.

*Greenberg Burzichelli Greenberg P.C.,* Lake Success (*Harry Greenburg* and *Genevieve E. Peeples* of counsel), for amicus curiae.

## OPINION OF THE COURT

ANDRIAS, J.

Supreme Court granted petitioners a preliminary injunction enjoining respondents from denying or revoking "release time" to the individual petitioners, pending resolution of arbitration proceedings. Because petitioners have failed to establish a likelihood of success on the merits of the claim to be arbitrated, we reverse and vacate the preliminary injunction.

The individual petitioners were elected by members of petitioner Patrolmen's Benevolent Association of the City of New York, Inc. (PBA) to four-year terms as the sole boroughwide PBA representatives for police officers assigned to the Bronx. On July 1, 2011, at the request of the PBA, the Office of

Labor Relations (OLR) issued release time certificates to the individual petitioners pursuant to New York City Executive Order No. 75 of 1973 (as amended by NY City Executive Order No. 6 of 1974) (EO 75), which approved full-time leave with pay and benefits.

On October 25, 2011, a grand jury indicted the individual petitioners in connection with an alleged ticket-fixing scheme. On October 28, 2011, pursuant to Civil Service Law § 75 (3-a), the individual petitioners were suspended without pay for 30 days, after which they were restored to modified duty. Meanwhile, by letter dated November 3, 2011, the OLR rescinded their release time certificates. The PBA declined the OLR's offer to issue new release time certificates for three employees of the union's choice, and filed a group grievance with the OLR.

After the grievance was denied, petitioners filed a request for arbitration with the New York City Office of Collective Bargaining seeking to reinstate the certificates on the ground that the rescission violated the parties' collective bargaining agreement and EO 75. In conjunction therewith, petitioners commenced this proceeding seeking a preliminary injunction pending arbitration, pursuant to CPLR 7502 (c).

CPLR 7502 (c) provides that the Supreme Court "may entertain an application for . . . a preliminary injunction in connection with an arbitration that is pending . . . but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." The party seeking the preliminary injunction must also demonstrate a probability of success on the merits, danger of irreparable injury in the absence of a preliminary injunction, and a balance of the equities in their favor (see Interoil LNG Holdings, Inc. v Merrill Lynch PNG LNG Corp., 60 AD3d 403, 404 [1st Dept 2009]; Erber v Catalyst Trading, 303 AD2d 165 [1st Dept 2003]). Applying these standards, even assuming that petitioners established that an award in their favor would be rendered ineffectual without provisional relief, as required by CPLR 7502 (c), they have failed to make the requisite showing of a likelihood of success on the merits, and therefore have not established their entitlement to injunctive relief (see Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839 [2005]).

The right of union-designated employees to be released from their job duties to perform union or joint labor-management activities is established in EO 75, which generally vests the City with broad oversight of employee representatives. Section 4 (4) of EO 75 provides:

"Organizing, planning, directing, or participating in any way in strikes, work stoppages, or job actions of any kind, are excluded from the protection or coverage of this Order. Any employees assigned on a full or part-time basis or granted leave of absence without pay pursuant to this Order who participate in such excluded activity may have such status suspended or terminated by the City Director of Labor Relations."

Section 4 (10) provides: "Employees assigned on a full-time or part-time basis or granted leave without pay pursuant to this Order shall at all times conduct themselves in a responsible manner." Section 5 provides that "[n]othing contained in this Order shall be deemed to have the effect of changing the character of any subject matter hereof which is a managerial prerogative and as a non-mandatory subject of collective bargaining."

Enforcement of EO 75 is committed to the OLR Commissioner, who may issue implementing rules and regulations. The indictments of the individual petitioners on charges related to a ticket-fixing scheme that include allegations of grand larceny, official misconduct, tampering with public records, and criminal solicitation constitute a sufficient basis for the City to determine that the individual petitioners did not "at all times conduct themselves in a responsible manner" (*see generally Colon v City of New York*, 60 NY2d 78, 82 [1983]; *Jenkins v City of New York*, 2 AD3d 291 [1st Dept 2003]). Accordingly, OLR was entitled to unilaterally rescind the release time certificates.

The dissent believes that petitioners made a sufficient showing of a likelihood of success on the merits by virtue of their argument that EO 75's provision for cancellation of release time in two defined sets of circumstances (*see* EO 75 § 4 [4], [7]) means that release time may not be cancelled for any other reason. However, EO 75 § 4 (4) focuses on strikes, work stoppages, and job actions, and makes clear that they are not protected. Although the subsection provides that any employee on a leave status who participates in such activity may be suspended or terminated, it does not state that this is the sole ground for rescission of leave status. EO 75 § 4 (10) imposes a requirement that all employees on leave conduct themselves in a responsible manner, the only reasonable inference from which is that there are consequences for noncompliance. Petitioners' proposed construction of EO 75 deprives the City of any authority to

unilaterally revoke release time and would render section 4 (10), the Order's catch-all provision, a nullity, which is an untenable construction (*see Namad v Salomon Inc.*, 74 NY2d 751 [1989]; *People v Kates*, 77 AD2d 417, 418 [4th Dept 1980], *affd* 53 NY2d 591 [1981]). It is also inconsistent with the broad oversight of employee representatives that the Order vests in the City. Indeed, the release time certificates state on their face that they "MAY BE REVOKED, MODIFIED OR CANCELLED," and petitioners do not suggest any purpose section 4 (10) might have, other than to vest the City with residual authority to rescind release time where warranted.

Since petitioners' interpretation of EO 75 is not plausible, they have not demonstrated a likelihood of success on the merits.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Joan B. Lobis, J.), entered December 30, 2011, insofar as appealed from as limited by the briefs, enjoining respondents from implementing any termination or revocation of "release time" leave for the three individual petitioners pending resolution of arbitration proceedings commenced by petitioner Patrolmen's Benevolent Association, should be reversed, on the law, without costs, the judgment vacated, the petition denied, and the proceeding dismissed.

GISCHE, J. (dissenting). I respectfully dissent and would affirm the order and judgment of the motion court. The court properly exercised its discretion in granting petitioner's motion for injunctive relief in aid of arbitration, enjoining respondents from terminating or revoking the release time previously issued to the individual petitioners pursuant to New York City Executive Order No. 75 of 1973 (as amended by NY City Executive Order No. 6 of 1974) (EO 75) (*see* CPLR 7502 [c]; *Kalyanaram v New York Inst. of Tech.*, 63 AD3d 435, 435 [1st Dept 2009]; *Matter of H.I.G. Capital Mgt. v Ligator*, 233 AD2d 270 [1st Dept 1996]). Petitioners met their burden of demonstrating that were they to prevail on their grievance at arbitration, any award in their favor would be rendered ineffectual without such provisional relief (CPLR 7502 [c]). The motion court also found that, under article 63 of the CPLR, petitioners had shown a "likelihood of success on the merits, irreparable injury in [the] absence of such relief and a balancing of the equities in [their] favor" (*Kalyanaram v New York Inst. of Tech.*, 63 AD3d 435 [2009]; *see Matter of H.I.G. Capital Mgt. v Ligator*, 233 AD2d 270 [1996]; *see also* CPLR 6301 *et seq.*).

On the merits, petitioner made a sufficient showing that the purpose of EO 75 is to provide standardized time and leave policies, practices and guidelines for City employees who serve as designated union representatives. Although EO 75 § 4 (4) allows the City's Office of Labor Relations (OLR) to suspend or terminate any employee who engages in "excluded activity," which is defined as "[o]rganizing, planning, directing, or participating in any way in strikes, work stoppages, or job actions of any kind," and EO 75 § 4 (10) further requires that employees who are granted leave without pay "conduct themselves in a responsible manner," there is no language in EO 75 that would specifically allow the City to revoke any certificates previously granted in a situation where, as here, the employee has been charged with committing a crime. Both parties present strong arguments on the law. However, the issue whether the City can unilaterally revoke its previous grant of release time to these three officers, who have pleaded not guilty to charges that they were involved in a ticket fixing scheme, is the very issue of the grievance that is the subject of arbitration. Contrary to the City's arguments, the motion court did not decide the merits of the grievance.

I differ with the majority to the extent that it interprets EO 75 § 4 (10) on this appeal. By interpreting this provision, the majority has resolved the very issue that is the subject of the grievance yet to be arbitrated. A party seeking a preliminary injunction does not have to provide conclusive proof of its ultimate right to such relief, and a preliminary injunction can, in the court's discretion, be issued where the right to the ultimate relief sought is disputed (*see Datwani v Datwani*, 102 AD3d 616 [1st Dept 2013]).

The motion court did not abuse its discretion and we should not reverse. The motion court only decided that petitioners had satisfied the requirements of CPLR articles 75 and 63 and that a preliminary injunction in aid of arbitration was warranted to maintain the status quo until the ultimate issue was decided by the arbitrator. Contrary to the City's arguments, the status quo was that the individual petitioners had certificates of release time which allowed them to appear on behalf of the Patrolmen's Benevolent Association of the City of New York, Inc., as union representatives. The petitioners could not have sought relief from the court until the City had already acted by revoking those certificates.

Petitioners also showed that they would suffer irreparable harm without the preliminary injunction. The individual

petitioners are officers who were designated by their union to act on behalf of its members. The City's offer, to allow the petitioners to substitute different representatives for the union and grant them release time for that purpose, does not ameliorate the harm because the union's chosen representatives are not fungible.

Petitioners also showed that the equities tip in their favor. Although agency heads must coordinate with the OLR in establishing reasonable limits on the number and titles of employees who spend their time on labor-related/union activities, EO 75 does not otherwise erode the independence of the unions in the administration of union matters.

DeGrasse and Manzanet-Daniels, JJ., concur with Andrias, J.; Tom, J.P., and Gische, J., dissent in a separate opinion by Gische, J.

Order and judgment (one paper), Supreme Court, New York County, entered December 30, 2011, reversed, on the law, without costs, the judgment vacated, the petition denied, and the proceeding dismissed.