Conlon Holdings LLC v Chanos & Co. LP (2024 NY Slip Op 51011(U))

[*1]

Conlon Holdings LLC v Chanos & Co. LP

2024 NY Slip Op 51011(U)

Decided on August 1, 2024

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 1, 2024
Supreme Court, New York County

Conlon Holdings LLC, ConlonBeithir LLC, Petitioners,

against
Chanos & Company LP, James S. Chanos, Respondents.

Index No. 154908/2024

Counsel for Petitioners: Luke A. McGrath, Esq., of Dunnington, Bartholow & Miller, LLP
Counsel for Respondents: William Hayward Gussman, Esq., and George Hong Liu Rowe, Esq., of Schulte Roth & Zabel LLP

Anar R. Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 21—39, 41—51 were read on this motion to/for PRELIMINARY INJUNCTION.
Petitioners Conlon Holdings LLC and ConlonBeithir LLC ("Petitioners") move by Order to Show Cause (Mot. Seq. No. 2) for an order preliminarily enjoining Respondents Chanos & Company LP (formerly known as Kynikos Associates LP; the "Company") and James S. Chanos (collectively "Respondents") pursuant to CPLR §§ 6301, 7502, 5106, 5228, and 6401 as follows: (a) that Respondents shall be restrained and enjoined from transferring the proceeds of the sale of the property located at 100 S. Pointe Drive, Miami Beach, Florida ("Miami Residence"); (b) that Kynikos Associates Ltd ("Kynikos"), General Partner of Chanos & Company LP, shall be removed as General Partner of Chanos & Company LP and shall not hold that position at the Company in the future unless and until agreed by a majority of disinterested Partners (excluding Mr. Chanos from such vote as an interested party); and (c) that a temporary receiver shall be appointed for the Partnership, defined as Kynikos and the Company, until such time that the non-interested partners vote to appoint a new General Partner. 
 Relevant Factual and Procedural Background
This proceeding arises from Petitioners' application seeking to enjoin Respondents from transferring the proceeds from the sale of the Miami Residence in aid of a pending arbitration, in [*2]which Petitioners (as Claimants) seek recovery from Respondents [FN1]
Chanos & Company LP, Kynikos, James S. Chanos LLC, George Liberopoulos, and MJGM LLC for breach of contract and breach of fiduciary duty, among other claims. Here, Petitioners resolve that Respondents will "abscond with monies" absent relief from the Court and render any relief from a successful arbitration as ineffectual.
The parties entered into a business arrangement in early 2020 whereby Petitioners made an investment of $7 million into the Company, making Petitioners Limited Partners of the Company. See NYSCEF Doc. Nos. 24 (2/10/20 Seventh Amended and Restated Agreement of Limited Partnership of Kynikos Associates LP), 25 (3/9/20 Eighth Amended and Restated Agreement of Limited Partnership of Kynikos Associates LP).
Prior to Petitioners' involvement and investment in the Company, Mr. Chanos, in his individual capacity, entered into a loan agreement with the Company on December 31, 2018 ("Loan Agreement"). NYSCEF Doc. No. 43 (12/31/18 Loan Agreement). The terms of the Loan Agreement state that Mr. Chanos, as "Borrower," received and promised to pay to the "Limited Partners except for James S Chanos LLC of Kynikos Associates LP," as "Lender," the sum of $15,989,102.00 (the "Loan"). The Loan Agreement further provides:
The Borrower agrees to provide Art Pieces, New York City Residence (3 East 75th Street, New York, NY 10021), Miami Residence (100 S Pointe Drive, Miami, FL 33139), and East Hampton Residence (70 Further Lane, East Hampton, NY 11937), referred to as the "Security", which shall transfer to the possession and ownership of the Lender IMMEDIATELY if this Loan should be in default. The Security may not be sold or transferred without the Lender's consent during the course of this Loan.
Id. The Loan Agreement is signed by Mr. Chanos, as Borrower, and Brian Nichols, on behalf of Lender Kynikos Associates LP. 
On May 8, 2019, Mr. Chanos provided a letter to Charles Hobbs, Brian Nichols, Robert Veninata, and Alan Best stating that he has "contributed art in the amount of $12,495,359 with a $3.5 million line of credit to Kynikos Associates LP;" and that Kynikos Associates LP "intends to sell the art and the proceeds will be used in partial satisfaction of my negative capital balance and my outstanding demand loan (see December 31, 2018 Loan Agreement)." NYSCEF Doc. Nos. 9 (5/8/19 Letter), 7 at ¶ 7 (Nichols Aff.). 
On March 3, 2021, Mr. Chanos wired $16 million to the Lender towards the outstanding balance of the Loan and accrued interest. NYSCEF Doc. Nos. 45 (3/3/21 Citibank Statement), 42 (Chanos Aff.) at ¶¶ 17—19. He subsequently contributed an additional $1.3 million to the Company in the first quarter of 2021. NYSCEF Doc. No. 42 at ¶¶ 17—19. The parties dispute whether Mr. Chanos has paid off the Loan based on the foregoing transactions. Petitioners maintain that (1) the wire transfer of $16 million was insufficient to pay off the Loan—although they do not state the amount of the shortfall; and (2) that "the tax returns and books and records [of the Partnership] show the receivable," which exceeded $9 million at the end of 2022. NYSCEF Doc. No. 36 at 5—6 (Pet. Mem. of Law). Respondents argue that the Company's then-CFO, Mr. Nichols, incorrectly accounted for the wire transfer of $16 million in various respects. [*3]For example, Mr. Nichols applied only $12 million to reduce the loan receivable and treated the remaining $4 million as a capital contribution. NYSCEF Doc. No. 41 at 5 (Resp. Mem. of Law in Opp'n); NYSCEF Doc. No. 42 at ¶¶ 20—24. Petitioners do not state in their moving papers what amounts they are currently owed in their capacity as Limited Partners—or on behalf of the Company—under the Loan Agreement. 
In November 2023, Mr. Chanos announced that he was shutting down the hedge funds he managed. Pursuant to Section 4.8(B) of the Tenth Amended and Restated Agreement of Limited Partnership of the Company ("Partnership Agreement"), dated January 1, 2022, and to which Petitioners are identified as Limited Partners, Kynikos, as General Partner, sent notices of withdrawal on December 8, 2023 to Petitioners ("Notice Letter"). NYSCEF Doc. Nos. 47 (12/8/23 Notice of Withdrawal Conlon Holdings LLC), 48 (12/8/23 Notice of Withdrawal ConlonBeithir LLC). Accordingly, Respondents maintain that the withdrawal became effective on the last day of the fiscal quarter—which was December 31, 2023—and Petitioners ceased to be Limited Partners. Petitioners did not object to the notices of withdrawal. Rather, on December 29, 2023, Petitioners filed a demand for arbitration against Chanos & Co. LP, Kynikos Associates, Ltd., James S. Chanos LLC, George Liberopoulos, and MJGM LLC. NYSCEF Doc. No. 4 (12/29/23 Arbitration Demand). In the arbitration demand, Petitioners assert various causes of action and seek, inter alia, payment of $9.5 million for unpaid balances in addition to $10,016,956 of accounts receivable. 
On January 30, 2024, the General Partner sent a second letter to Petitioners stating that no distribution would be made because "[a]s of December 31, 2023 [the Withdrawal Date], the net value of the total assets of the Partnership (including cash and illiquid assets, such as furniture, art and receivables) is less than the amount being reserved due to pending litigation." NYSCEF Doc. No. 30 (1/20/24 Letter; "Distribution Letter"). On February 14, 2024, counsel for Petitioners sent a response letter asserting that the Company, General Partner, and Mr. Chanos were in default under the Partnership Agreement and that Petitioners were rejecting the Notice Letter and Distribution Letter. NYSCEF Doc. No. 33 (Objections to Notices of Withdrawal).
The parties have participated in at least four mediation sessions since March 2024 before Mediator Charles Moxley. NYSCEF Doc. No. 2 at ¶ 4 (L. McGrath Aff.). The instant judicial proceeding was precipitated by the sale of the Miami Residence by Mr. Chanos on May 8, 2024, for $17.8 million. Petitioners assert that Mr. Chanos did not disclose the sale to them despite the terms of the Loan Agreement, which identify the Miami Residence as security for the Loan. Petitioners do not dispute that the Miami Residence had been listed publicly for sale since May 2023, or that the sale was publicly disclosed.
Petitioners initiated these proceedings by the filing of the Verified Petition and a proposed order to show cause seeking a temporary restraining order (TRO) and preliminary injunction on May 24, 2024. NYSCEF Doc. Nos. 1—13. The Court held a TRO hearing on June 4, 2024, at which time the Court denied Petitioners' application for a TRO, and permitted Petitioners to re-file an amended order to show cause. NYSCEF Doc. Nos. 18 (6/4/24 Court Notice); 40 (6/4/24 Tr.). Petitioners refiled an amended Order to Show Cause for Preliminary Injunction on June 18; the Court signed the Order to Show Cause on the same date; Respondents filed their opposition papers on July 12, 2024. 

Preliminary Injunction in Aid of Arbitration
Pursuant to CPLR § 7502(c), the Court may hear an application for a preliminary [*4]injunction in connection with a pending arbitration. "[T]he party who seeks a preliminary injunction in aid of arbitration must show, in addition to the potential ineffectiveness of the award, the usual three requirements for equitable relief: (1) likelihood of success on the merits of the claim; (2) irreparable injury in the absence of the injunction, and (3) a balance of equities in favor of the moving party." CPLR § 7502, Practice Commentary C7502:6 Attachments and Preliminary Injunctions; see also Moquinon, Ltd. v. Gliklad, 58 N.Y.S.3d 874, 2017 WL 1482163 at *3—5 (NY Cnty. Sup. Ct. 2017) (discussing the distinction in legal standard between an application for a preliminary injunction and an attachment under CPLR § 7502(c)). The First Department has adopted this approach and requires both a showing that the arbitration award could be rendered ineffectual as well as the three elements for injunctive relief pursuant to CPLR § 6301. Patrolmen's Benevolent Ass'n of the City of New York, Inc. v. City of New York, 112 AD3d 116, 118 (1st Dept. 2013) (citing Interoil LBG Holdings, Inc. v. Merrill Lynch PNG LBG Corp., 60 AD3d 403, 404 (1st Dept. 2009) and Erber v. Catalyst Trading, 303 AD2d 165, 165 (1st Dept. 2003) ("even assuming that petitioners established that an award in their favor would be rendered ineffectual without provisional relief, as required by CPLR 7502(c), they have failed to make the requisite showing of a likelihood of success on the merits, and therefore have not established their entitlement to injunctive relief")).
Here, Petitioners argue that they must only show that the purported violation of their rights "tends to render any potential arbitration award ineffectual," and, in doing so, have misapprehended and/or conflated the appropriate standard of review. See NYSCEF Doc. No. 36 at 12. Unsurprisingly then, Petitioners do not cite to any binding rule or precedent that directs the Court to their argument that the sole issue is whether the purported act "in violation of Movant's rights" "render[s] any potential arbitration award ineffectual." Id. 
Ineffectualness of Arbitration Award
Petitioners argue that Respondents have violated their rights under the Loan Agreement by selling the Miami Residence without their consent and will dissipate the proceeds from the sale "by removing them from the jurisdiction or making ill-advised investments . . . ." Id. Petitioners argue that said dissipation would render any arbitration award in their favor as ineffectual. The Court observes that the arbitration panel will determine, among other issues, whether Respondents have breached the Loan Agreement and/or Partnership Agreement. The sale proceeds from the Miami Residence are relevant to the extent that they are used to satisfy any money damages awarded in arbitration.
Petitioners offer no evidence to support a finding that Respondents have acted improperly to conceal the sale of the Miami Residence. Rather, they concede the listing and sale of the property was and is publicly available. Further, Petitioners offer no evidence that Respondents are likely to dissipate the proceeds from the sale—let alone transfer the funds outside of the jurisdiction or make poor investment decisions to yield substantial losses, which would adversely impact Respondents themselves. Petitioners' citation to General Motors Acceptance Corp. v. Norstar Bank, 141 Misc 2d 349 (Erie Cnty. Sup. Ct. 1988) is misplaced. Petitioners do not allege here that Respondents have commingled proceeds. 
In opposition, Mr. Chanos submits a sworn Affidavit in which he avers that "the Company is well capitalized and has substantial assets to satisfy any judgment"; that he transferred a total of $4.4 million back to the Company—including $4 million from the proceeds of the sale of the Miami Residence on May 15, 2024; and that he personally owns substantial assets, including a property in New York City purchased in 2008 for over $20 million. NYSCEF [*5]Doc. No. 42 at ¶¶ 54, 58.
The Court declines to rely on Petitioners' accusations alone—that Respondents will dissipate the proceeds from the sale of the Miami Residence—to substantiate a finding that any award they might receive in the pending arbitration would be rendered ineffectual.
Likelihood of Success on the Merits
A party moving for a preliminary injunction need not establish certainty of success. See Props for Today, Inc. v. Kaplan, 163 AD2d 177, 178 (1st Dept. 1990). Rather, a prima facie showing of an entitlement to relief is sufficient. See Parkmed Co. v. Pro-Life Counseling, Inc., 91 AD2d 551, 553 (1st Dept. 1982). The likelihood of Petitioners' success on the merits is "measured in terms of the likelihood of success in arbitration." SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 84 (2d Cir. 2000). 
In this respect, the Court observes a pronounced deficiency in Petitioners' application. In the Arbitration Demand, Petitioners raise various causes of action including, but not limited to, Respondents' breach of the Loan Agreement, as well as additional causes of action arising under the Partnership Agreement for misappropriation, breach of contract, fraud, breach of fiduciary duty, gross negligence, and corporate waste. In their moving papers, Petitioners state, "an arbitration is proceeding seeking recovery from Chanos's wholly owned entity for breach of fiduciary duty—Chanos's breach. Instead of owning up to his obligations, Chanos sought to close down his Company (referred to herein as the Partnership). But he admits that he has not followed through—recently offering with no proof that he has put some money back into the Partnership." NYSCEF Doc. No. 36 at 4. In the present application, however, Petitioners focus primarily on their purported rights pursuant to the Loan Agreement, and neglect to address the balance of their claims in arbitration. Accordingly, Petitioners have failed to address—let alone demonstrate— that they are likely to succeed on the merits in the pending arbitration.
Nevertheless, the Court will address the likelihood of success on the merits in arbitration as to Petitioners' claims related to the Loan Agreement. The Court need not resolve the factual issue of whether Respondents have paid off the Loan and/or whether they are in breach of the Loan Agreement. The Court focuses instead on whether Petitioners have made a prima facie showing that they have standing to enforce the Loan Agreement—the threshold argument as conceded by the parties in their respective papers. Petitioners argue they have standing to enforce the Loan Agreement based on three theories: (1) as aggrieved parties where they invested in the Company based on Mr. Chanos's promises and representations, and subsequently incurred monetary losses; (2) as aggrieved parties under a theory of promissory estoppel where they relied "to their detriment upon Chanos's promise to pay the loan and treatment of the receivable as a cash equivalent on the books and records of the partnership"; and (3) the Loan Agreement unambiguously defines the "Lender" as "Limited Partners except for James S Chanos LLC of Kynikos Associates LP," which necessarily encompasses any and every limited partner at any point in time following the execution of the Loan Agreement, regardless of whether said limited partner was a limited partner as of December 31, 2018, or is currently a limited partner.
The Court is unpersuaded that Petitioners are likely to prevail on any of these theories. First, Petitioners have not articulated how their status as aggrieved parties as investors in the Company affords them standing to enforce the Loan Agreement—which was executed prior to their investments in 2020, and is irrelevant to their respective partnership agreements with the Company. Petitioners' reliance on Saratoga County Chamber of Commerce, Inc. v. Pataki, 100 NY2d 801 (2003), which involved the standing of a citizen-taxpayer to challenge the expenditure [*6]of state funds, is inapt and has no bearing on the present factual circumstances where private parties seek to enforce an agreement to which they are not signatories. Likewise, Petitioners' reliance on Ridley v. Bayhealth Med. Ctr., Inc., 2018 WL 1567609 (Del. Super. Ct. 2018), which involved a putative class action to recover from a hospital for overcharging for copies of medical records, is inapplicable here as this action does not involve "standing to bring an action in Delaware."
Second, Petitioners assert that they have standing under a theory of promissory estoppel, but they do not allege that they reasonably relied upon Mr. Chanos's clear and unambiguous promise to repay the loan in deciding to invest in the Company, and sustained a resulting injury. Petitioners cite to the Affidavit of Sean Conlon, Manager of Conlon Holdings, LLC, at paragraph 6 ("At the time we invested, and afterward, and specifically on that call again, Chanos repeatedly acknowledged and admitted that Movants were 'Limited Partners' under the Loan Agreement and had rights thereunder.") as evidence that "Movants relied heavily on those promises in deciding to join the Partnership." NYSCEF Doc. No. 36 at 4. However, said statement does not establish that Petitioners reasonably decided to invest in the Company based on a promise to repay the Loan and have been harmed as a result of said reliance. Rather, Petitioners negotiated and entered into partnership agreements with the Company—none of which reference the Loan Agreement—and, by their account, remain as Limited Partners.
Finally, Petitioners argue that the plain, unambiguous language of the Loan Agreement establishes that the agreement is between Mr. Chanos and the "Limited Partners except for James S Chanos LLC of Kynikos Associates LP," which "incorporates whoever the Limited Partners are while the Loan Agreement is in effect." NYSCEF Doc. No. 36 at 6. Respondents counter that Petitioners were not Limited Partners at the time the Loan Agreement was executed on December 31, 2018; they became Limited Partners pursuant to the February 10, 2020 Seventh Amended and Restated Agreement of Limited Partnership of Kynikos Associates LP, and the March 9, 2020 Eighth Amended and Restated Agreement of Limited Partnership of Kynikos Associates LP. Respondents further argue that Petitioners ceased being Limited Partners as of December 31, 2023, pursuant to the Notice Letter. The parties do not dispute that Petitioners were not Limited Partners as of December 31, 2018, nor were they signatories to the Loan Agreement. 
The Court is unpersuaded by Petitioners' characterization of the Loan Agreement as unambiguous with respect to the contracting parties. On one hand, the Loan Agreement states the parties to the agreement are the "Limited Partners except for James S Chanos LLC of Kynikos Associates LP" and Mr. Chanos. The Loan Agreement does not identify the then-Limited Partners by name. On the other hand, the Loan Agreement is signed by Brian Nichols on behalf of Kynikos Associates LP, which might lead to the reasonable conclusion that the agreement is between Mr. Chanos and the Company. 
In light of this apparent ambiguity, the trier of fact may consider extrinsic evidence to discern the parties' intentions at the time they entered the contract. See, e.g., Evans v. Famous Music Corp., 1 NY3d 452, 458 (2004); Greenfield v. Philles Recs., Inc., 98 NY2d 562, 569 (2002). Here, however, Petitioners did not enter into the contract at issue and there is no other agreement, including the Partnership Agreement, to suggest that the Petitioners intended to be a party to the Loan Agreement (and at any point in time). 
Based on the foregoing, Petitioners have not sufficiently established a likelihood of success on the merits of their claims in arbitration.
[*7]Irreparable Injury
Irreparable injury is found where an award for monetary damages is not adequate compensation. See Credit Agricole Indosuez v. Rossiykiy Kredit Bank, 94 NY2d 541, 544—45 (2000). "Injunctive relief is not appropriate in actions involving breach of contract where a plaintiff has an adequate remedy at law." O'Neill v. Poitras, 158 AD2d 928, 928 (4th Dept. 1990). Likewise, parties seeking to assert claims for investment losses "can be compensated by damages and therefore cannot demonstrate irreparable harm." Broadway 500 W. Monroe Mezz II LLC v. Transwestern Mezzanine Realty Partners II, LLC, 80 AD3d 483, 484 (1st Dept. 2011) (internal citations omitted).
Petitioners do not dispute that they seek monetary damages in the pending arbitration or that monetary damages are an appropriate remedy for any alleged injuries they incurred. See NYSCEF Doc. No. 4. Petitioners also do not posit any argument that they will suffer irreparable harm, and instead adopt a standard of urgency, in that Mr. Chanos will dissipate funds absent injunctive relief. The Court further observes that, in their Petition, Petitioners allege that Mr. Chanos previously "sold two other properties for a total of $20 million" in June 2023 and "in contravention of the Company's ownership interest is [sic] that property (in light of the Loan Agreement) and in breach of the Loan Agreement." NYSCEF Doc. No. 1. at ¶ 12. Petitioners did not seek injunctive relief at that time and could not provide the Court with an answer as to why they did not object to the transactions at the time or anytime thereafter. NYSCEF Doc. No. 40 at 19:1—13 (6/4/24 Tr.). Petitioners' assertion that Respondents breached the Loan Agreement in June 2023 undercuts the sense of urgency that ordinarily accompanies a motion for injunctive relief. Finally, for the reasons discussed supra at Section "Ineffectualness of Arbitration Award," the Court finds that Petitioners have not established that they will suffer irreparable injury if their application is denied. 
Balance of Equities
In weighing the equities, the Court considers whether any irreparable injury to be sustained by Petitioners is more burdensome than any harm caused to Respondents through the imposition of the injunction. Petitioners are asking the Court to freeze all proceeds from the sale of Mr. Chanos's personal residence while the parties engage in arbitration. Given the Petitioners' failure to establish a likelihood of success on the merits and the availability of money damages, the balance of equities is in Respondents' favor.

Removal of General Partner and Appointment of Temporary Receiver
Petitioners ask the Court to remove Kynikos as General Partner of the Company and, pursuant to CPLR §§ 5106, 5228, and 6401, to appoint a temporary receiver for the Partnership until a new General Partner is appointed. Petitioners devote two brief paragraphs to their arguments in support of their relief—the majority of which consists of mere accusations and conclusory statements. NYSCEF Doc. No. 36 at 13—14. The Court declines to grant the relief sought.
Respondents are correct that the relief sought necessarily requires the Court "to make findings of fact that go to the heart of the pending arbitration." F & E Trading LLC v. Kroitoro, No. 654182/2021, 2021 WL 3290844, at *2 (NY Cnty. Sup. Ct. Aug. 02, 2021). Petitioners concede the Court would need to make a factual determination that the General Partner should be "removed for breach of fiduciary duty, misconduct and conflict of interest." NYSCEF Doc. No. 36 at 13. Such a determination requires findings of fact as is clearly established by the case law upon which Petitioners rely. In Drucker v. Mige Assocs. II, 225 AD2d 427 (1st Dept. 1996), [*8]the Appellate Division determined that the general partner breached his fiduciary duty to the partnership and was properly removed by the lower court pursuant to a non-jury trial. Likewise, in Cohen v. Cohen, 179 AD3d 1012 (2d Dept. 2020), the general partner was removed for breach of fiduciary duty, self-dealing, and conflict of interest on a motion for summary judgment. Here, the extreme relief Petitioners are seeking are not ripe for this Court's consideration, and bear directly upon the relief Petitioners seek in arbitration.
No judgment has been rendered in this proceeding, and therefore the Court declines to entertain Petitioners' application for the appointment of a receiver pursuant to CPLR §§ 5106 and 5228. To warrant the drastic remedy of appointment of a temporary receiver, Petitioners must establish by clear and convincing evidence that there is a danger of irreparable loss and damage—for example, that Respondents "are on the verge of insolvency or may dissipate assets." See Somerville House Mgmt. v. Am. Television Syndication Co., 100 AD2d 821, 822 (1st Dept. 1984). Here, there has been no showing that, absent the appointment of a temporary receiver, Petitioners "would suffer irreparable loss or that the firm's assets were being diverted or wasted." In re. Armienti & Brooks, 309 AD2d 659, 661 (1st Dept. 2003).
Accordingly, it is, hereby
ORDERED that Petitioners' Order to Show Cause (Mot. Seq. No. 2) is denied; and it is further
ORDERED that all other relief requested and not decided herein is denied.
DATE August 1, 2024
ANAR R. PATEL, J.S.C.

Footnotes

Footnote 1:Respondents in the pending arbitration proceeding do not include James S. Chanos, in his individual capacity, and do include additional parties George Liberopoulos and MJGM LLC. NYSCEF Doc. No. 4 (12/29/23 Arbitration Demand).