(October 28, 2003)

■ In the Matter of the Judicial Dissolution of ARMIENTI & BROOKS, P.C. MICHAEL ARMIENTI, Appellant; ALPHONSO D. BROOKS, Respondent. [767 NYS2d 2] —Order and judgment (one paper), Supreme Court, New York County (Charles Tejada, J.), entered March 5, 2003, which, to the extent appealed from as limited by the brief, appointed a permanent receiver of the dissolved law firm, Armienti & Brooks, P.C., unanimously reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and that part of said order and judgment vacated.

Petitioner Michael Armienti and Alphonso Brooks established the law firm of Armienti & Brooks, P.C., in 1996, specializing as defense attorneys in various types of tort actions. By July 1, 2002, each of them, the sole and equal shareholders of the firm, brought petitions pursuant to Business Corporation Law § 1104 (a), subsequently consolidated, to dissolve the firm. In his petition, Armienti alleged that he and Brooks were irreconcilably divided and deadlocked as to issues regarding the firm's operation and management. Brooks, he explained, had suffered a stroke in May 2001 and thereafter, claiming to be 100% disabled, collected disability payments under the firm's insurance policy. As a result, Armienti claimed, he had to manage and operate the firm as if he were the sole shareholder. He

asked to be named the firm's receiver upon dissolution, charging Brooks with unauthorized draws on the firm's line of credit and asserting the existence of an immediate threat to the dissipation of the firm's assets by Brooks. In addition, he noted that the firm was responsible for a 10-year lease, as to which Armienti and Brooks had each signed a personal guarantee. Brooks's petition also sought the appointment of a receiver and an injunction to restrain any dissipation of the firm's assets and the transaction of any unauthorized business on behalf of the firm. Brooks also claimed that despite his stroke he had always been available to discuss the operation of the firm with Armienti. After joinder of issue, both sides moved for summary judgment for the immediate dissolution of the firm and related relief. As part of his cross motion, Brooks again sought the appointment of a receiver. Armienti opposed the appointment of a receiver, arguing that there was no basis for such a drastic remedy.

When the parties subsequently appeared for a conference they agreed to dissolve the firm and the court ordered dissolution. At a subsequent conference nine days later, on August 21, 2002, the court declined to rule on the receiver issue and ordered the parties to proceed with an accounting. Armienti's counsel chose an accountant from a list of 10 submitted by Brooks and thereafter made repeated efforts, as evidenced by letters to Brooks's counsel, to have Brooks agree to proceed with the accounting and to agree to its scope. Apparently, Brooks was insisting that the firm's lease, which exposed both parties to approximately $1 million in personal liability because of the guarantees, should not be included in the valuation of the firm's assets and liabilities. Faced with Brooks's failure to respond or cooperate, Armienti retained his own accountants and proceeded with the accounting. On December 12, 2002, Armienti's counsel again wrote to Brooks's counsel to apprise him of the accounting process and to invite him to participate. Brooks did not respond.

After refusing Armienti's request to adjourn a scheduled January 9, 2003 conference to February 7, 2003 so as to enable the accountants to complete the accounting and after being fully advised of Brooks's recalcitrance in cooperating in any way with the court-ordered accounting that Armienti had, on his own, undertaken and was about to complete, the IAS court, without any consideration of the requisite legal standard for such appointment, appointed a permanent receiver merely because the parties had not settled the case. As the court stated to Armienti's counsel after expressly declining to hear oral

argument on the merits: "The only reason I adjourned [the case] is so that both sides could come up with a settlement of this matter. You have not done that. It's not your fault it hasn't happened. Consequently, the only thing outstanding is what receiver should be appointed and I am appointing a receiver, so that this matter can come to an end at some point." We reverse.

CPLR 6401 (a) authorizes the appointment of a receiver where "there is danger that the property will be removed from the state, or lost, materially injured or destroyed." As this Court has had occasion to note, "The drastic remedy of the appointment of a receiver is to be invoked only where necessary for the protection of the parties * * * 'There must be danger of irreparable loss, and courts of equity will exercise extreme caution in the appointment of receivers, which should never be made until a proper case has been clearly established' " (*Matter of Di Bona [General Rayfin]*, 45 AD2d 696 [1974], quoting *Laber v Laber*, 181 App Div 733, 735 [1918]). There was no showing here whatsoever that, absent a receivership, Brooks would suffer an irreparable loss or that the firm's assets were being diverted or wasted (*see Matter of Harrison Realty Corp.*, 295 AD2d 220 [2002]). Moreover, the court ignored the fact that Brooks, on numerous occasions, had flouted its direction to proceed with an accounting and had refused, over a five-month period, to cooperate or even respond to Armienti's repeated requests to cooperate in the accounting and to review the firm's records. In effect, the court's determination rewarded Brooks for his refusal to cooperate. Finally, in light of its use here it bears emphasizing that the drastic remedy of appointment of a receiver is not a remedy to be used as a sanction. Concur—Andrias, J.P., Saxe, Sullivan, Rosenberger and Marlow, JJ.