Matter of Cellino v Cellino & Barnes, P.C. (2019 NY Slip Op 06365)





Matter of Cellino v Cellino & Barnes, P.C.


2019 NY Slip Op 06365


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, CURRAN, AND WINSLOW, JJ.


1418 CA 18-00669

[*1]IN THE MATTER OF ROSS M. CELLINO, JR., PETITIONER-RESPONDENT,
v
CELLINO & BARNES, P.C., AND STEPHEN E. BARNES, RESPONDENTS-APPELLANTS. (APPEAL NO. 1.) 






DUKE HOLZMAN PHOTIADIS & GRESENS LLP, BUFFALO (GREGORY P. PHOTIADIS OF COUNSEL), AND LIPSITZ GREEN SCIME CAMBRIA LLP, FOR RESPONDENTS-APPELLANTS.
CONNORS LLP, BUFFALO (TERRENCE M. CONNORS OF COUNSEL), AND HODGSON RUSS LLP, FOR PETITIONER-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered February 6, 2018. The order, insofar as appealed from, granted in part the cross motion of petitioner for the appointment of a temporary receiver. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Petitioner, one of the two directors and 50% shareholders of respondent corporation Cellino & Barnes, P.C. (PC), brought this special proceeding against the PC and petitioner's co-shareholder Stephen E. Barnes (collectively, respondents) seeking, inter alia, judicial dissolution of the PC pursuant to Business Corporation Law § 1104 (a) (1) and (3). Formed in 1998 by petitioner and Barnes, the PC began as a regional law firm with offices in Buffalo and Rochester. In 2008, the PC began its expansion into the downstate market, and in 2013, Barnes approached petitioner about opening an office in California. Petitioner declined but, according to petitioner, by that time Barnes and the chief operating officer (COO) of the PC had already made preparations to open an office in Los Angeles. Barnes thereafter formed Cellino & Barnes, L.C. (LC), a California corporation that was separate from the PC and in which Barnes had a 99.9% interest. Petitioner became a minority owner with a .1% ownership in the LC.
In 2017, petitioner filed an initial petition for dissolution of the PC and also withdrew from and divested himself of his interest in the LC. Petitioner subsequently filed an amended petition for dissolution alleging, among other things, that there had been a breakdown in communication between himself and Barnes with respect to the management and direction of the PC. In particular, petitioner alleged that Barnes had favored the LC to the detriment of the PC by allowing the LC to utilize the PC's computer network, telephone number, and employees without adequate compensation. Petitioner further alleged, inter alia, that Barnes had directed to the LC mass tort cases solicited by the PC in the Northeast; paid a bonus to the PC's COO from the PC's account for work that the COO did on behalf of the LC; refused petitioner's request to terminate the COO as a PC employee and hire him as an LC employee; and rejected petitioner's request to restrict the COO's access to the PC's bank account. Respondents moved, inter alia, for summary judgment dismissing the amended petition, and petitioner cross-moved for the appointment of a temporary receiver pursuant to Business Corporation Law § 1202 (a) (1). In appeal No. 1, respondents appeal from an order that granted in part petitioner's cross motion for the appointment of a temporary receiver. In appeal No. 2, respondents appeal, as limited by their brief, from that part of an order of Supreme Court denying respondents' motion insofar as it [*2]sought summary judgment dismissing the amended petition. We affirm in both appeals.
Addressing first appeal No. 2, we reject respondents' contention that the court erred in denying their motion insofar as it sought summary dismissal of the amended petition on the ground that dissolution would not benefit the shareholders because the PC has continued to function effectively and prosperously. The determination whether a corporation should be dissolved is within the discretion of the court (see Business Corporation Law § 1111 [a]; Matter of Kemp & Beatley [Gardstein] , 64 NY2d 63, 73 [1984]), and "the benefit to the shareholders of a dissolution is of paramount importance" in making that determination (§ 1111 [b] [2]). Although respondents submitted evidence demonstrating that the PC has continued to conduct business at a profit, dissolution is not to be denied in a proceeding brought pursuant to Business Corporation Law § 1104 simply because the corporate business has been conducted at a profit (see § 1111 [b] [3]) or because the dissension has not yet had an appreciable impact on the profitability of the corporation (see Molod v Berkowitz , 233 AD2d 149, 150 [1st Dept 1996], lv dismissed 89 NY2d 1029 [1997]).
Here, the record contains ample evidence of dissension and deadlock between petitioner and Barnes, and we conclude that, in opposition to respondents' showing that the PC continues to operate profitably, petitioner raised issues of fact whether dissension and deadlock have so impeded the ability of the PC to function effectively that dissolution would benefit the shareholders. In a close corporation like the PC, "the relationship between the shareholders is akin to that of partners and when the relationship begins to deteriorate, the ensuing deadlock and dissension can effectively destroy the orderly functioning of the corporation" (Greer v Greer , 124 AD2d 707, 708 [2d Dept 1986], appeal dismissed 69 NY2d 947 [1987]). When a point is reached at which the shareholders who are actively conducting the business of the corporation cannot agree, dissolution may be in the best interests of those shareholders (see Matter of Gordon & Weiss , 32 AD2d 279, 281 [1st Dept 1969]), and we agree with the court's determination that a hearing should be held to give the parties an opportunity to present their evidence on this controverted issue (see Matter of Ricci v First Time Around , 112 AD2d 794, 794 [4th Dept 1985]; Matter of Pivot Punch & Die Corp ., 9 AD2d 861, 861 [4th Dept 1959]; see also Matter of Giordano v Stark , 229 AD2d 493, 494 [2d Dept 1996]; Matter of Kournianos [H.M.G., Inc.] , 175 AD2d 129, 129-130 [2d Dept 1991]).
Contrary to respondents' contention in appeal No. 1, we conclude that the court did not abuse its discretion in appointing a temporary receiver (see generally Greer , 124 AD2d at 708; Nelson v Nelson , 99 AD2d 917, 918 [3d Dept 1984]) for the limited purposes of "oversee[ing] the separation of the LC and the PC; . . . assess[ing] the appropriate amounts due and owing from the LC to the PC, if any; and . . . oversee[ing] the separation of clients between the two entities." In a proceeding for judicial dissolution brought under article 11 of the Business Corporation Law, the court has discretion to "make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation, including the appointment . . . of a receiver under article 12 (Receivership)" (Business Corporation Law § 1113; see § 1202 [a] [1]), and petitioner's submissions in support of his application for the appointment of a temporary receiver demonstrated that the entanglement of the PC and the LC created a danger of irreparable loss and that a receivership is necessary for the protection of the interests of the parties (see generally Matter of Armienti , 309 AD2d 659, 661 [1st Dept 2003]; Matter of Harrison Realty Corp ., 295 AD2d 220, 220 [1st Dept 2002]). Specifically, the affidavits of petitioner, a licensed certified public accountant (CPA) and certified valuation analyst retained by petitioner, a former CPA for the PC, and an office manager for the PC supported petitioner's allegations of economic improprieties in the form of inadequate reimbursement by the LC to the PC for cross-charges. Those affidavits also raised issues of fact whether the LC was taking mass tort cases that otherwise would have been handled by the PC and whether it was using web addresses owned by the PC to redirect clients to the LC's new website. Inasmuch as it likely will be difficult to quantify what, if any, economic harm the PC has suffered as a result of clients being shepherded from the PC to the LC and inasmuch as respondents have refused to allow petitioner's CPA to speak with the COO of the PC, we conclude that the court did not abuse its discretion in appointing a temporary receiver (see generally Greer , 124 AD2d at 708; Nelson , 99 AD2d at 918) to determine what if any amount the LC owes the PC, rather than ordering an accounting.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court