FR v AR (2025 NY Slip Op 50549(U))

[*1]

FR v AR

2025 NY Slip Op 50549(U)

Decided on April 15, 2025

Supreme Court, Nassau County

Dane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 15, 2025
Supreme Court, Nassau County

FR, Plaintiff,

against
AR, Defendant.

Index No. XXXXXX/2023

Edmund M. Dane, J.

The following papers have been read on this motion:
Defendant's Order to Show Cause dated January 16, 2025 x
Plaintiff's Opposition dated March 10, 2025 x
Defendant's Reply dated March 25, 2025. x
INTRODUCTION
The salient facts of this case give rise to an ever-evolving issue: since the Court of Appeals decision Kahn v. Kahn, infra, what authority, if any, does the Court have to order the pendente lite sale of the marital residence? Nearly fifty years ago, prior to the enactment of the equitable distribution law,[FN1]
the Court of Appeals held that unless a court alters the legal relationship of husband and wife by granting a divorce, an annulment, a separation or by declaring a void marriage a nullity, it has no authority to order the sale of a marital home owned by the parties as tenants by the entirety. Kahn v. Kahn, 43 NY2d 203 (1977). The following facts are undisputed. These parties married on xxxx, 2007. The parties' "marital residence", located in Bethpage, New York, was acquired after the parties' marriage and prior to the commencement of this action. Both parties' respective sworn Statement(s) of Net Worth confirm that title to the marital residence is held solely in the name of the Plaintiff. The Plaintiff commenced this matrimonial action against the Defendant on May 11, 2023. Then, after the Plaintiff commenced this action, he ceased paying the mortgage on the marital residence. The bank then commenced a foreclosure action March 28, 2024. The Defendant has now, pendente lite, made an application to sell the marital residence. But the facts of this case, more particularly, provide this Court with an opportunity to address a variant of the facts of Kahn. In Kahn, the parties held title to the marital residence as tenants by the entirety. Kahn, 43 NY2d at 206. In this action, title to the marital residence is held solely by the Plaintiff. The principal issue on this application is whether or not [*2]the Court has the authority, pendente lite, to order the sale of a solely titled marital residence? Since the Court finds this matter distinguishable from Kahn, the Court answers that question in the affirmative, and orders the immediate sale of the marital residence.
PRELIMINARY STATEMENT
The Defendant moves by Order to Show Cause dated January 16, 2025 (Motion Sequence No.: 001) seeking an Order: (1) Citing the Plaintiff as and for his willful contempt of Court by virtue of his intentional failure and/or willful refusal to comply with the terms and provisions of the Preliminary Conference Order, dated February 6, 2024 by virtue of his willful failure to and/or refusal to provide financial discovery; (2) Citing the Plaintiff as and for his willful contempt of Court by virtue of his intentional failure and/or willful refusal to comply with the terms and provisions of the Order Appointing Real Estate Appraiser, dated June 6, 2024, by virtue of his willful failure to and/or refusal to pay Bert Nelson & Associates to have the marital residence appraised; (3) Pursuant to Judiciary Law § 753 and § 756, punishing Plaintiff, FR, for contempt of court by sentencing him to six (6) months incarceration for his willful violation of the Preliminary Conference Order, dated February 6, 2024 and the Order Appointing Real Estate Appraiser, dated June 6, 2024; (4) Upon such a finding of civil contempt, giving Plaintiff, FR, leave to purge his contempt within ten (10) days of an order of this Court, and upon the Plaintiff's failure to purge his contempt, directing the Plaintiff to appear for sentencing and issue an Order of Commitment to Civil Jail for Contempt, directing that he be incarcerated for a period of six (6) months or such other duration of time which the Court finds to be appropriate; and/or, in the alternative (5) Pursuant to CPLR § 3124, compelling Plaintiff to comply with discovery responses pertaining to the Preliminary Conference Order, dated February 6, 2024 and directing the Plaintiff to produce within (20) days from the date of the determination of this application all of the documents required to be produced pursuant to said Preliminary Conference Order; (6) Pursuant to CPLR § 3126, in the event that the Plaintiff fails to comply with the directives of the Court concerning financial disclosure, that the issues which the information is relevant be resolved in accordance with the claims of the Defendant and precluding the Plaintiff from offering any documentary evidence at trial regarding his finances as well as striking his complaint; (7) Directing Plaintiff to immediately bring the mortgage current or, in the alternative; (8) Directing the immediate sale of the marital residence, located at xxxx, Bethpage, NY 11714, pendente lite, and upon the sale of same, directing that the net proceeds, with the exception of $50,000 which is to be dispersed to Defendant, be held in escrow pending determination of Equitable Distribution; (9) Pursuant to CPLR § 5106, appointing the Plaintiff,, or an individual chosen by the Court, as Receiver to effectuate the sale of the marital residence in order to preserve a marital asset from being lost through foreclosure, with the Receiver to be paid from the Plaintiff's share of the net proceeds, if any from the sale of the marital residence; (10) Awarding Defendant such other and further relief as to this Court seems just, proper and equitable. .
BACKGROUND
The parties were married on xxxx, 2007. The parties have one (1) child, Francisco, born xxxx, 2008. The parties appeared for a Preliminary Conference on February 6, 2024, at which time the parties executed, and this Court so ordered, the Preliminary Conference Stipulation & Order On February 6, 2024, this Court issued an Order Appointing Attorney for the Child [*3]whereby Theresa F. Kloeckner, Esq., was appointed as attorney for the subject child (hereinafter referred to as the "AFC"). The matter was calendared for a compliance conference on March 4, 2024 at 11:30 a.m. The Plaintiff failed to appear at the compliance conference, and the Court thereupon issued an Order to Appear directing the parties to appear for a conference on April 10, 2024. On June 5, 2024, this Court issued an Order Appointing Real Estate Appraiser whereby it appointed Jed Nelson Associate to appraise the premises located at xxxx, Bethpage, New York (hereinafter referred to as the "Bethpage Residence"). On August 5, 2024, this Court issued a Short Form Order directing the Plaintiff to serve and file a sworn Statement of Net Worth within seven (7) days thereof. On August 5, 2024, this Court issued a Certification Order.
THE PARTIES' CONTENTIONS
Defendant's Contentions:
The Defendant sets forth that the parties purchased the Bethpage Residence in August of 2011. She sets forth that since purchasing the home, the Plaintiff always paid the mortgage thereon until July of 2023, when he stopped making those mortgage payments, notwithstanding that he earns at least $165,000.00 per annum. She sets forth that the Plaintiff is gainfully employed by the XXXX. She sets forth that she is employed by the XXXX $54,308.04 per annum. She sets forth that the Bethpage Residence, as a result of the Plaintiff's cessation of the mortgage payments, has been placed into foreclosure. She sets forth that the Plaintiff has failed to appear for two court conferences during this matrimonial action. She argues that the Plaintiff should be held in contempt of court because he has failed to pay for the real estate appraisal and has failed to provide discovery pursuant to the Preliminary Conference Stipulation & Order. She argues that the Plaintiff should be precluded from offering evidence at trial because the Plaintiff has not provided on sheet of paper in discovery notwithstanding the fact that, within forty-five days of the Preliminary Conference, he was to provide three years of tax returns, credit card statements, checking and savings account statements, brokerage account statements, pension and retirement account statements, and other documents. She argues that the Bethpage Residence should be sold because it was not until two months after he commenced this divorce action when he ceased paying the mortgage, despite earning $166,000.00 annually and being able to take his girlfriend to Aruba and Jamaica. She argues that the Plaintiff takes no financial responsibility. She argues that there is equity in the Bethpage Residence, as the outstanding mortgage is $452,000.00 and the Bethpage Residence is worth more than that sum. She argues that she is seeking to preserve an asset.
Plaintiff's Opposition:
The Plaintiff sets forth that both parties reside in the Bethpage Residence. He sets forth that he has to travel as it relates to his employment, and, therefore, he is not readily available to respond to the Defendant's requests. He argues that in February of 2024 he was a pro se litigant and was unfamiliar with the procedures of divorce litigation. He denies willfully ignoring or refusing to comply with court orders. He sets forth that his Statement of Net Worth - which was filed on August 12, 2024 - contains his W-2 forms from 2021, 2022 and 2023, and a recently quarterly account statement. He sets forth that he paid 100% of the appraisal fee for the appraisal of the Bethpage Residence and the appraisal was completed. He sets forth that he recently obtained his PenFed statements for the period from December 16, 2021 through December 16, 2024. He acknowledges that a foreclosure action was commenced in 2024, but denies willfully [*4]avoiding paying the mortgage, as he does not want to lose the home that the parties' child was raised in. He sets forth that he is actively opposing the foreclosure action. He argues that he is unable to bring the mortgage current immediately, and, through the foreclosure action, he is attempting to pursue loss mitigation.
Defendant's Reply:
The Defendant argues that despite the Plaintiff's claim that he was a pro se litigant in February, 2024, he hired his counsel on February 12, 2024, and, since that date, has failed to appear at three of the twelve scheduled court conferences. The Defendant argues that despite producing the PenFed statements, the Plaintiff has still failed to produce mortgage statements, failed to produce credit card statements, and failed to produce most of his retirement account statements. She argues that on May 30, 2023, the Plaintiff took a $38,552.57 net distribution from his Thrift Savings Plan and on June 7, 2023, the Plaintiff withdrew $33,166.63 from his PenFed Credit Union, despite commencing this divorce action on May 11, 2023. The Defendant argues that the Plaintiff's failure to pay the mortgage was willful and undertaken to scare the Plaintiff. The Defendant finally argues that the Plaintiff has failed to produce any documentation that he requested a loan modification or that he has started loss mitigation relief.
DISCUSSION + ANALYSIS
SALE OF MARITAL RESIDENCE
The Defendant seeks the pendente lite sale of the Bethpage Residence.[FN2]
In Kahn v. Kahn, the Court of Appeals was presented with the following question:
"...whether, in a matrimonial action, a court may order the sale of real property held by the parties as tenants by the entirety, even though the marital relationship has not been legally altered..."
Kahn v. Kahn, 43 NY2d 203 (1977). In answering that question, the Court of Appeals held:
We hold that unless a court alters the legal relationship of husband and wife by granting a divorce, an annulment, a separation or by declaring a void marriage a nullity, it has no authority to order the sale of a marital home owned by the parties as tenants by the entirety.
Kahn, 43 NY2d at 210 (emphasis added). See also Delvito v. Delvito, 6 AD3d 487 (2d Dept. 2004) (it is settled that courts have no authority to order the sale of property held by tenants by the entirety without the parties' consent, unless the legal relationship of husband and wife is first altered through judicial intervention); see also Berk v. Berk, 170 AD2d 564 (2d Dept. 1991). To some degree, some courts, while citing the general notion of Kahn, have omitted the reference to "...property owned by the parties as tenants by the entirety..." and simply stated "marital residence". For instance, in Harrilal v. Harrilal, the Second Department wrote that "...[t]he court [*5]could not, without the mutual consent of the parties, order the sale of the marital residence..." Harrilal v. Harrilal, 128 AD2d 502 (2d Dept. 1987); see also Mollah v. Mollah, 27 Misc 3d 1231(A) (Supreme Court Queens County 2010) ("...[s]ignificantly though, absent consent of the parties, the court is without authority to direct the sale of marital property prior to judgment..."); see also Kayden v. Kayden, 234 AD2d 345 (2d Dept. 1996) ("...[w]e conclude, however, that prior to some alteration in the legal relationship between the parties, the Supreme Court was without power, absent the consent of the parties, to direct the sale of the marital residence..." One could, conceivably, therefore, interpret Harrilal, supra, Mollah, supra and Kayden, supra, to stand for the notion that any property classified as the parties "marital residence", irrespective of how title is held, could not be sold pendente lite, absent an agreement to the contrary. That's not, however, what Kahn stands for, nor is it what Kahn held. Kahn's holding was strictly limited to property owned by the parties as tenants by the entirety.
The Court finds that it has the authority to direct the pendente lite sale of the marital residence in this matter based upon myriad factors. First, because of how title is held, the Court does not find that it is bound by the holding in Kahn, supra. Here, it is undisputed that title to the Bethpage Residence is held solely in the name of the Plaintiff.[FN3]
One of the theories in Kahn was that, "...[w]here, however, husband and wife separate without the aid of a judicial decree, they remain one legal person; and, therefore, they continue to own property acquired as tenants by the entirety just as they did prior to their separation..." Kahn, 43 NY2d at 207, 2010. The Court of Appeals reasoned, in part, that "...the legislative history surrounding section 234 indicates clearly that the Legislature did not intend to alter existing substantive property law principles in enacting this section..." Id. at 209. In this action, to the contrary, the Court does not find that it is altering a tenancy by the entirety without altering the status of the parties' as husband and wife, as there is no tenancy by the entirety in the Bethpage Residence to alter. Since the Bethpage Residence is solely titled, the Court finds that it able to distinguish this matter from the holding in Kahn. .
Second, the Court has examined the text and spirit of the equitable distribution law, and finds that, given how title is held, DRL § 236B authorizes the Court to sell the Bethpage Residence pendente lite. DRL § 236(B)(5)(c) provides that marital property should be distributed equitably. If the Court is required to equitably distribute marital property, that marital property to be equitably distributed should be in existence at the time of distribution, not merely just in existence at the time of commencement of the action. Put a different way, if an asset with equity such as a house, is in existence at the commencement of this action, it is, in part, incumbent upon the Court to ensure that neither party takes any affirmative action to diminish that equity. Moreover, the Court must consider, when equitably distributing marital property, the probable future financial circumstances of each party (see DRL § 236(B)(5)(c)(9)). If a marital residence is foreclosed upon during a matrimonial action, resulting in either a diminution, or complete loss of, equity, it is a natural consequence that the probable future financial circumstances of the [*6]parties will be detrimentally impacted at the time of judgment. Such a result seems illogical. Additionally, the Court must consider, in equitably distributing marital property, the wasteful dissipation of assets by either spouse (see DRL § 236(B)(5)(c)(12)). But why even get to this point? While the matrimonial court may be able to recompense the aggrieved spouse by a money judgment, often times, such judgments are partially, or totally, uncollectible.
Third, the Court of Appeals, in 1993, wrote in Kaplan v. Kaplan that"...[t]he revolutionary enactment of the Equitable Distribution Law in 1980...recognized that marriage is an "economic partnership" that each spouse has individually contributed to during the marriage..." Kaplan v. Kaplan, 82 NY2d 300 (1993). It further wrote, in 2008, that "...[t]he economic partnership should be considered dissolved when a matrimonial action is commenced which seeks divorce, or the dissolution, annulment or declaration of the nullity of a marriage, i.e., an action in which equitable distribution is available..." Mesholam v. Mesholam, 11 NY3d 24 (2008); see also Savgnano v. Savignano, 194 AD3d 769 (2d Dept. 2021) (the economic partnership should not be considered dissolved until a matrimonial action is commenced). If the economic partnership is considered dissolved upon the commencement of this action, the Court finds that it should be able to issue orders necessary during the pendency of an action to preserve the assets which were the byproduct of the economic partnership that are ultimately subject to distribution by the court.
Fourth, the law favors preservation of marital assets (see generally Weinstock v. Weinstock, 8 Misc 3d 221 (Supreme Court Nassau County 2005); see also Stratton v. Stratton, 39 Misc 3d 1230(A) (Supreme court Sullivan County 2013); see also C.M. v. E.M., 82 Misc 3d 198 (Supreme Court Nassau County 2023)), and since the law is in favor of such preservation, the only way to preserve the Bethpage Residence is to order its sale. While the Court of Appeals, nearly fifty years ago, in Kahn wrote, in part, that "...[a]lthough section 234 empowers a court to make a direction concerning possession of property...the legislative history makes clear that the court may exercise its discretion only with regard to questions of possession...", but in 2015, the Court of Appeals also articulated that "...Domestic Relations Law § 234 allows courts to issue preliminary injunctions aimed as the preservation of marital assets pending equitable distribution..." El-Dehdan v. El-Dehdan, 26 NY3d 19 (2015). The Court declines to be hamstrung by an outmoded interpretation of DRL § 234, and the Court does not find that § 234 prohibits the sale of a solely titled asset, especially if a directive that the asset be sold results in the preservation of the asset in question. The Bethpage Residence was acquired during the marriage and is, therefore, presumptively a marital asset. Property acquired during the marriage is presumed to be marital property. M.I. v. C.I., 83 Misc 3d 1270(A) (Supreme Court Nassau County 2024). The Bethpage Residence was appraised. The appraised value of same was $740,000.00 as of January 24, 2025.[FN4]
The Plaintiff's own sworn Statement of Net Worth reflects an outstanding mortgage encumbering the Bethpage Residence of $452,000. That leaves equity of nearly $288,000.00. The Court has considered that the Bethpage Residence appears to be the largest asset of this marriage. As Justice Victor Grossman aptly articulated in J.H. v. C.H.:
Any realistic assessment of the parties' situation would lead to the conclusion that the marital home must be sold to salvage any remaining equity or at least to reduce the [*7]financial loss.
J.H. v. C.H., 82 Misc 3d 1202(A) (Supreme Court Putnam County 2024). The Court has considered, with each passing day, the likelihood of penalties, fees and interest accruing on the unpaid mortgage, the result of which will be the inevitably diminution of equity in the largest asset of the marriage. The Court declines to let the largest asset of this marriage turn into waste, and the Court hereby orders the immediate sale of the Bethpage Residence so as to preserve the largest asset of this marriage pendente lite. See generally El-Dehdan, supra. Inaction by the Court at this juncture would be tantamount to countenancing marital waste. Putting the facts of this case in their simplest form, the reality is, of course, that the foreclosure action will likely (and almost inevitably) result in the sale of the Bethpage Residence. While that may not come imminently, that is, of course, likely the end result. The result of this application? The sale of the Bethpage Residence. The only difference being that the sale, now, results in preservation of equity, whereas the sale months or even years down the road results in a reduction of equity.
Fifth, the Plaintiff's own admissions buttress the need for the sale. The Court has considered the Plaintiff's own statement that he does "...not want to lose my home..." and that he is actively opposing the foreclose action. But the Plaintiff's conduct is contrary to his words. While he alleges that he is trying to pursue loss mitigation, he fails to append any proof of same. Additionally, the Plaintiff fails to append any proof that he, for instance, applied for a mortgage modification. Critically, he offers no defense for his cessation of mortgage payments. The Plaintiff states in his opposing Affidavit that he is trying to preserve the marital residence. The Court agrees that the asset should be preserved, but disagrees as to the methodology of preservation. Therefore, the Court elects to preserve the asset by ordering the immediate sale, as the equity in the house is simply more important than the actual structure.
Sixth, the Plaintiff's conduct, and his earnings, do not justify his failure to pay the mortgage. The Plaintiff does not deny failing to pay the mortgage. The Court simply does not believe the Plaintiff, to the extent argued, that he cannot afford to pay the monthly mortgage payments. Critically, as stated before, the Plaintiff fails to provide any reason or justification as to why he ceased paying the mortgage. The Court has examined the Plaintiff's finances. The Plaintiff's gross earnings in 2023 were $165,685.40. After subtracting what he paid in federal income taxes of $20,086.71, Social Security taxes of $9,932.40, Medicare taxes of $2,402.43, state income taxes of $2,035.78, and local income taxes of $5,837.78, his after-tax income was $125,390.30. The Plaintiff still had the wherewithal to voluntarily contribute $13,952.80 as an elective deferral to a section 401(k) cash or deferred arrangement. Even so, the Plaintiff's annualized expenses on his sworn Statement of Net Worth, exclusive of the mortgage, taxes and insurance on the Bethpage Residence total $64,644 per annum on after-tax income of $125,390.30. The $60,746.30 difference is unexplained by the Plaintiff, and he has failed to convince the Court that he was financially unable to keep up with his mortgage payments.[FN5]

Seventh, a line of authority, post Kahn, establishes exceptions to Kahn. Some trial court decisions have authorized the pendente lite sale of the marital premises. For instance, the court in [*8]St. Angelo v. St. Angelo found that the marital residence therein appeared to be the "major marital assets" which was in imminent danger of foreclosure. St. Angelo v. St. Angelo, 130 Misc 2d 583 (Supreme Court Suffolk County 1985). The facts of St. Angelo also indicated that the wife therein had produced a buyer who is ready, willing and able to purchase said premises. Id. In Gordon v. Gordon, that court authorized the pendente lite sale of the marital residence - a cooperative apartment. Gordon v. Gordon, 144 Misc 2d 27 (Supreme Court New York County 1989). In Gordon, the wife therein had vacated the marital residence which cost $2,000 per month to maintain. Id. Furthermore, the marital residence was a cooperative apartment, which could not have been owned "by the entirety". Id. In D.R.D. v. J.D.D., the court granted an application - pendente lite - to sell a marital residence. D.R.D. v. J.D.D., 74 Misc 3d 237 (Supreme Court Monroe County 2021). In that case, the marital residence was in need of repair and the wife refused to allow the husband in the home to make the repairs. Id. In addition, in that case, the parties had agreed to retain a realtor, and the wife, despite her concerns about the children, had signed a listing agreement. Id. Also, the husband was paying carrying charges on the home which, inter alia, included the wife's child from another relationship and the husband was, in effect, paying for housing costs for a nonmarital child. Id. The court additionally found that the wife was using the husband's equity as an interest free loan. Id. In J.H. v. C.H., supra, the court ordered the marital residence sold pendente lite based upon, among other things, the needs of the parties, citing that foreclosure proceedings were pending against the marital residence.[FN6]
J.H., 2024 NY Misc. LEXIS 919 at *3. In other words, there are, in any event, exceptions to Kahn.
In conclusion, irrespective of whether or not the Plaintiff's conduct is characterized as financial misfeasance, monetary mismanagement, or economic self-destruction, his abject indifference to the obligation to maintain the economic status quo and refusal to maintain the marital residence pendente lite warrants the conclusion arrived at by the Court as the only viable option. In considering the factors that the Court has laid-out herein, the Court has given additional consideration to the fact that from the date of the acquisition of the marital residence until the commencement of this action, there is no evidence that the marital residence was not maintained; it was only after the Plaintiff himself commenced this action did he unilaterally decide to cease mortgage payments. That is unacceptable.
Accordingly, in light of all of the aforesaid, it is hereby:
ORDERED, that Branch (8) of the Defendant's Order to Show Cause dated January 16, 2025 be and the same is hereby GRANTED TO THE EXTENT set forth in this Decision and Order; and it is further
ORDERED, that the Bethpage Residence shall be forthwith placed on the open market for sale and sold as expeditiously as possible in accordance with the terms and conditions of this Decision and Order; and it is further
ORDERED, that the parties shall immediately list the Bethpage Residence for sale with a real estate broker of their joint choosing, for an initial asking price of not less than $740,000.00; [*9]and it is further
ORDERED, that the parties shall accept any offer within three (3%) percent of the listing price from any bona fide third party purchaser; and it is further
ORDERED, that if no offer is made within three (3%) percent of the listing price within the first sixty (60) days of listing the Bethpage Residence, then, in that event, a two (2%) percent price reduction shall be implemented every sixty (60) days until the sale of the Bethpage Residence; and it is further
ORDERED, that the parties shall still accept any offer within three (3%) percent of the lowered listing price after each sixty (60) day reduction until the sale is completed; and it is further
ORDERED, that both parties shall cooperate with the listing agent in effectuating the sale of the Bethpage Residence, which includes, among other things, causing the Bethpage Residence to be presentable and available for viewing at the broker's request; and it is further
ORDERED, that neither party shall impede the sale of the Bethpage Residence.
The Court cannot equitably distribute the proceeds of sale of the Bethpage Residence until the final judgment. See DRL § 236(B)(5)(a) ("...the court, in an action wherein all or part of the relief granted is divorce...shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment...") (emphasis added). Accordingly, it is hereby:
ORDERED, that so much of Branch (8) of the Defendant's Order to Show Cause dated January 15, 2025, which seeks an advance of $50,000.00 from the proceeds of sale to the Defendant be and the same is hereby DENIED; and it is further
ORDERED, that Branch (7) of the Defendant's Order to Show Cause dated January 15, 2025 be and the same is hereby DENIED;[FN7]
and it is further
ORDERED, that the net proceeds of sale which are derived from the sale of the Bethpage Residence shall be held in escrow by the Defendant's counsel pending the final Judgment of Divorce (see DRL § 236(B)(5)(a)) or written agreement of the parties.
The Court finds the appointment of a Receiver to be drastic at this time. The appointment of a Receiver is a drastic remedy. Armienti v. Brooks, 309 AD2d 659 (1st Dept. 2003). This is especially so considering that the Court is only now directing the sale of the Bethpage Residence. The Defendant may re-file her application seeking the appointment of a Receiver in the event that the Plaintiff fails to cooperate and/or impedes the sale of the Bethpage Residence. Accordingly, it is hereby:
ORDERED, that Branch (9) of the Defendant's Order to Show Cause dated January 15, 2025 be and the same is hereby DENIED WITHOUT PREJUDICE and with leave to renew at a later date in the event same is necessary as indicated herein.
CONTEMPT OF COURT
A contempt citation is a drastic remedy which should not be granted absent a clear right to such relief. Pinto v. Pinto, 120 AD2d 337, 501 N.Y.S.2d 835 (1st Dept. 1986); Usina Costa Pinto SA v. Sanco Sav Co. Ltd., 174 AD2d 487, 571 N.Y.S.2d 264 (1st Dept. 1991). The Court declines to adjudicate the Plaintiff to be in contempt of Court for discovery-related [*10]noncompliance. The Court does not find that the Defendant has established her prima facie right to an adjudication of contempt inasmuch as contempt is a drastic remedy that may have resulted in a fine or the Plaintiff's incarceration for not producing financial documentation. Such a result would be inequitable to this Court. Any inequity in this finding or any prejudice that may befall the Defendant for the Plaintiff's untimely and noncompliance with discovery is ameliorated by the discovery sanctions that the Court will impose herein (see infra). Additionally, inasmuch as the Bethpage Residence was eventually appraised, the Court finds so much of the Defendant's application seeking a contempt finding for failure to pay the real estate appraiser to be moot. Accordingly, it is hereby:
ORDERED, that Branches (1), (3) and (4) of the Defendant's Order to Show Cause dated January 15, 2025 be and the same are hereby DENIED; and it is further
ORDERED, that Branch (2) of the Defendant's Order to Show Cause dated January 15, 2025 be and the same is hereby deemed MOOT.
COMPELLING DISCOVERY
CPLR § 3124, entitled "Failure to disclose; motion to compel disclosure" provides that:
If a person fails to respond to or comply with any request, notice, interrogatory, demand, question or order under this article, except a notice to admit under section 3123, the party seeking disclosure may move to compel compliance or a response.
The trial court is vested with broad discretion to supervise disclosure. See generally Bertalo's Restaurant v. Exchange Ins. Co., 240 AD2d 452 (2d Dept. 1997); see Those Certain Underwriters at Lloyds, London v. Occidental Gems, Inc., 11 NY3d 843 (2008); see Flynn v. City of New York, 101 AD3d 803 (2d Dept. 2012). Generally, there should be broad financial disclosure in matrimonial actions in which equitable distribution is sought to enable the parties to ascertain the nature and value of marital assets, as well as to uncover potential hidden assets. See generally Antreasyan v. Antreasyan, 245 AD2d 405 (2d Dept. 1997); see Kramer v. Kramer, 227 AD2d 531 (2d Dept. 1996); see Gape v. Gape, 125 AD2d 637 (2d Dept. 1986).
The Preliminary Conference Stipulation & Order was signed on February 6, 2024. Three (3) years of various documents were to be exchanged not later than forty-five (45) days after the Preliminary Conference. It appears that the Plaintiff has only provided his PenFed account statements for three years. The Plaintiff was woefully delinquent in filing his Statement of Net Worth, which he filed in August, 2024, six months after the Preliminary Conference. His Statement of Net Worth contained only his W-2 Form for years 2021, 2022 and 2023, and a single quarterly account statement from his Thrift Savings Plan. It does not appear that the Plaintiff has provided any other document.[FN8]
The Plaintiff, without sufficient explanation, is clearly recalcitrant with respect to discovery production pursuant to the Preliminary Conference Stipulation and Order. The Court therefore finds it necessary to issue an Order compelling him to comply with the Preliminary Conference Stipulation & Order. The Court, however, finds the drastic remedy of preclusion and/or the striking of the Plaintiff's Complaint to be extreme at this time. Preclusion is a drastic remedy. Pepsico, Inc. v. Winterthur Intl. Am. Ins. Co., 24 AD3d 742 [*11](2d Dept. 2005). Striking a pleading is a drastic remedy. Farrell v. Keldiyarov, 234 AD3d 933 (2d Dept. 2025). This is especially true since it does not appear that the Defendant has issued a Notice for Discovery & Inspection, as no such notice is appended to her moving papers. The Plaintiff is cautioned, however, that his continued recalcitrance with respect to discovery, after the Defendant issues her Notice for Discovery & Inspection, may result, at a later date, in either an order precluding him from offering evidence or testimony at trial, an order resolving issues against him, and/or an order striking those portions of his complaint with respect to relief relative to equitable distribution. Accordingly, it is hereby:
ORDERED, that Branch (5) of the Defendant's Order to Show Cause dated January 15, 2025 be and are hereby GRANTED TO THE EXTENT as set forth in this Decision and Order; and it is further
ORDERED, that within thirty (30) days of this Decision and Order, the Plaintiff shall serve upon the Defendant's counsel a formal itemized Response to the Preliminary Conference Stipulation & Order with documents appended thereto responsive to Section "(2)(G)" thereof; and it is further
ORDERED, that Branch (6) of the Defendant's Order to Show Cause dated January 15, 2025 be and the same is hereby DENIED WITHOUT PREJUDICE and with leave to renew in the event of noncompliance with this Decision and Order.
Any other relief requested not specifically addressed herewith is hereby DENIED.
This constitutes the DECISION AND ORDER of this Court.
Dated: April 15, 2025
Mineola, New York
E N T E R :
Hon. Edmund M. Dane, J.S.C.

Footnotes

Footnote 1:See generally Beran v. Beran, 8 Misc 3d 546 (Supreme Court Schenectady County 2005) (equitable distribution law enacted in 1980).

Footnote 2:From here on out, the residence at issue will interchangeably be referred to either as the "marital residence" or the "Bethpage Residence".

Footnote 3:While the parties' sworn Statement(s) of Net Worth differ in terms of the year in which the marital residence was acquired, either way, there is no dispute that the marital residence was acquired during the parties' marriage and prior to the date of commencement of this action. And both parties' sworn Statement(s) of Net Worth indicate that title to the marital residence is held solely in the name of the Plaintiff.

Footnote 4:See Plaintiff's Exhibit "C" to his opposition, NYSCEF Document No.: 48.

Footnote 5:The Plaintiff also fails to deny the Defendant's assertion that he took his significant other on vacations to Aruba and Jamaica. 

Footnote 6:The court also noted that there was a prior foreclosure proceeding on the marital residence therein, which was discontinued upon payment of $40,000. J.H., 2024 NY Misc. LEXIS 919 at *3.

Footnote 7:Branch (7) was plead in the alternative to the immediate sale, which the Court is ordering.

Footnote 8:Notably, his Statement of Net Worth is devoid of his last three pay check stubs and his last filed income tax return.